UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

c

| | |
|---|---|
| KENNETH DILLARD,<br>Petitioner | CIVIL ACTION NO. 5:14-CV-00950;<br>SEC. P |
| VERSUS | JUDGE FOOTE |
| BURL CAIN,<br>Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus (28 U.S.C. § 2254) filed by *pro se* petitioner Kenneth Dillard ("Dillard") (#125684) on May 6, 2014. (Doc. 1). Dillard attacks his 2009 first degree robbery conviction. Dillard was adjudicated as a second felony habitual offender and sentenced to sixty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. (Doc. 1; Doc. 10-3, p. 7; Doc. 10-6, p. 758). Dillard is currently incarcerated at Louisiana State Penitentiary in Angola, Louisiana. (Doc. 1).

Dillard raises the following grounds for habeas relief:

1. The trial court erred in treating his application for post-conviction relief as a motion for habeas corpus relief under La.C.Cr.P. Article 351 *et seq*.

2. Dillard's trial counsel was ineffective for: (1) failing to make a contemporaneous objection to prejudicial hearsay testimony in violation of the Confrontation Clause; (2) failing to properly argue a Motion to Quash based on Double Jeopardy; (3) failing to comply with the statutory mandates of La.C.Cr.P. Article 841 by failing to request the desired relief at the hearing on

the Motion to Quash; and (4) failing to properly argue the Motion to Reconsider Sentence.

3. The trial court erred in failing to grant Dillard an evidentiary hearing on his application for post-conviction relief.

Respondent answered the petition. (Doc. 10). Dillard's habeas petition is now before the Court for disposition.

I. Background

The facts of this case are set forth by the Louisiana Second Circuit Court of Appeal at State v. Dillard, 55 So.3d 56, 58-59 (La. App. 2d Cir. 2010), writ den., 75 So.3d 454 (La. 2011):

> On February 14, 2008, Dillard went to the Family Dollar Store on Centenary Boulevard in Shreveport. Wearing a faded red flannel shirt, a light-colored windbreaker, black stocking cap, and white pants, he asked the manager, Bonnie Bounds, where a particular brand of shaving cream was located. He then picked up a can and went to the register. Angie Osborne, a customer in the store, knew him and even called him by name, wishing him a Happy Valentine's Day. When Dillard reached the cash register, he had one hand in the pocket of his windbreaker. Indicating that he had a weapon, he told Bounds to give him the money from the safe or he would shoot her. Bounds could not open the nearby safe. Dillard demanded that she ring up the shaving cream so that the register drawer would open. She did so. He grabbed a bunch of cash in denominations of tens, fives and ones, then fled the store on a pink bicycle.
>
> On his way out of the store, he bumped into Aaronetta Moore. The cashier called to Moore that she had been robbed by that man, and Moore bravely got into her car and followed the defendant. Moore called the police to report what she was doing, providing her location as well as a description of defendant. She also reported that the suspect had fallen off his bicycle and left it in a ditch on the corner of East Merrick Street and Cornwell Avenue.

Moore lost sight of the defendant momentarily, but saw him again after she circled the block. Dillard had removed his windbreaker and cap, but Moore observed his plaid shirt and white pants. She flagged down Shreveport Police Department Corporal Joseph A. Dews and told him that the defendant had entered Mr. Jim's Chicken ("Mr. Jim's") on Youree Drive and was attempting to blend in with the crowd. When Dews arrived at Mr. Jim's, he saw that Corporal Steve Hawthorne had already responded to the radio report, gone to the restaurant, identified the suspect, and taken him into custody. Hawthorne found on Dillard's person a wad of money in small denominations.

Detective Jack Miller and Corporal Tim Adgate of the Shreveport Police Department conducted an immediate show-up with two witnesses, each of whom identified Dillard as the robber. Bounds also identified him.

Shreveport Police Department Corporal Michael Greaver met with several witnesses. One was George Lindle, who told him that he saw the suspect run out of the store. Greaver took Lindle to Mr. Jim's to view the suspect. The witness was nervous, saying, "That's the man but that's not the clothes he was wearing. He had a green jacket on."

After he got back to the store, Greaver heard that Officer David Emberton had located the suspect's bike at the corner of East Merrick and Cornwell, and needed an officer to handle it. Greaver responded, photographed the bike, and watched it until detectives decided what they wanted to do with it. He later released the bicycle to Angela Goldsmith, who told him that she and Dillard lived together, and that he had left their house on the bicycle that morning.

Emberton found a black nylon skullcap behind a house on East Olive Street. Greaver took photos of the skullcap and seized it. While Emberton was still looking for the rest of the clothing, Greaver spoke to Leonard Flemon, who was raking leaves on the northwest corner of East Merrick and Cornwell. Greaver testified that Flemon said he saw a man removing his coat as he ran behind a house.

Emberton walked around the house and found, hidden behind the cinder blocks of the house, a white, green, and black windbreaker with a black knit cap wadded up inside the coat. Greaver photographed the clothing, then seized it.

Dillard was charged by bill of information with one count of the first degree robbery of Bonnie Bounds. (Doc. 10-3, pp. 1, 8). The case was initially set for trial on

February 2, 2009. (Doc. 10-3, p. 2). After trial began, the State supplemented its prior discovery response. That supplement potentially contained <u>Brady</u> material. Following a joint motion by the State and the defense, the court granted a mistrial. (Doc. 10-3, p. 3). The trial was reset for trial on April 29, 2009. Again, after trial began, there was another potential <u>Brady</u> issue. The defense filed for a mistrial, which the court granted. (Doc. 10-3, p. 4). On May 19, 2009, Dillard again went to trial, and he was convicted by a unanimous jury on May 20, 2009, of one count of first degree robbery. (Doc. 10-3, pp. 6, 242-43; Doc. 10-5, pp. 697-98).

A motion for new trial and a motion for post-verdict judgment of acquittal were filed on May 22, 2009. Both motions were denied. (Doc. 10-3, pp. 6, 247-48; Doc. 10-6, p. 725). The State filed a second felony habitual offender bill of information on May 27, 2009, and Dillard was adjudicated as a second felony offender. (Doc. 10-3, pp. 6-7, 249; Doc. 10-6, pp. 744-45). Dillard was sentenced to sixty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. (Doc. 10-3, p. 7; Doc. 10-6, p. 758).

On May 17, 2010, Dillard appealed his conviction and sentence to the Second Circuit Court of Appeal. (Doc. 10-6, pp.771-92). Appellate counsel then filed a supplemental brief on July 6, 2010. (Doc. 10-6, pp. 833-44). The Second Circuit affirmed Dillard's conviction and sentence on November 3, 2010. (Doc. 10-6, pp. 866-91). Dillard filed a supervisory writ to the Louisiana Supreme Court on February 24, 2011. (Doc. 10-6, pp. 921-39). He filed a supplemental brief on March 4, 2011. (Doc.

10-6, pp. 986-96). The Louisiana Supreme Court denied writs without comment. (Doc. 10-6, p. 1009).

Dillard filed his application for post-conviction relief with the First Judicial District Court on November 7, 2012. (Doc. 10-6, pp. 1010-50). On January 2, 2012, the court denied the application as untimely. But following the filing of a supervisory writ, the Second Circuit determined that the application was timely and remanded to the trial court. (Doc. 10-7, pp. 1149, 1153). In April 2013, the First Judicial District Court denied Dillard's application for post-conviction relief. (Doc. 10-7, pp. 1155-57).

Dillard filed a supervisory writ to the Second Circuit Court of Appeal on June 17, 2013. (Doc. 10-7, p. 1160-72). The Second Circuit denied writs on July 26, 2013. (Doc. 10-7, p. 1218).

On August 30, 2013, Dillard filed a supervisory writ to the Louisiana Supreme Court (Doc. 10-7, pp. 1220-34), which the court denied without comment on April 17, 2014 (Doc. 10-7, p. 1309).

Dillard filed this writ for habeas corpus on May 6, 2014. (Doc. 1).

II. Rule 8(a)

The Court is able to resolve this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to Dillard's claims, and the state court records provide the required and adequate factual basis. See Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

III. <u>Law and Analysis</u>

    A.     <u>Failure to Exhaust</u>

Both the federal habeas corpus statute and federal jurisprudence require the petitioner to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). In order to satisfy the exhaustion requirement, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review[.]" <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). Therefore, a petitioner may not have exhausted his state court remedies if he has only presented it to the appellate court and state supreme court, but not to the state trial court. See <u>Doughty v. Louisiana</u>, No. 11-1279, 2011 WL 7643844, at *6 (E.D. La. Dec. 14, 2011); <u>Malveo v. Smith</u>, Civil Action No. 14-3, 2017 WL 1017646, at *2 (M.D. La. Feb. 9, 2017). "However, 28 U.S.C. 2254(b)(2) allows federal courts the discretionary ability to deny an application on the merits notwithstanding an applicant's failure to exhaust his or her state remedies if the unexhausted claim is 'patently without merit.'" <u>Brown v. Cain</u>, No. 11-cv-579, 2015 WL 7455771, at *6 (W.D. La. Oct. 20, 2015) (citing 28 U.S.C. § 2254(b)(2); <u>Coningford v. Rhode Island</u>, 640 F.3d 478, 483-84 (1st Cir. 2011); <u>Granberry v. Greer</u>, 481 US 129 (1987)).

    B.     <u>Standard of review.</u>

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(1), and questions of fact are reviewed under Section 2254(d)(2). See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir.), *cert. den.*, 534 U.S. 885 (2001), and cases cited therein.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Dowthitt v. Johnson, 230 F.3d 733, 740–41 (5th Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts

7

of the prisoner's case." Id. at 741. Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct. However, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### C. The trial court did not deprive Dillard of his due process rights in the ruling on his application for post-conviction relief.

Dillard alleges that the trial court erred in treating his application for post-conviction relief as a motion for habeas corpus relief under Louisiana Code of Criminal Procedure article 351 *et seq*. Wilson argues that, if the trial court erred, "then what other issues in the matter were misinterpreted and erroneously ruled upon." (Doc. 1-2, p. 9/16). He cites to the Fifth and Fourteenth Amendments to the United States Constitution, and Louisiana Constitution Articles §§ 1, 2, 3, and 16, and alleges that the ruling deprived him of his due process rights. (Doc. 1-2, p. 9/16).

As is apparent from the nature of the claim, Dillard did not raise the issue at the district court level. Dillard first raised this claim in his supervisory writ to the Second Circuit Court of Appeal on June 17, 2013. (Doc. 10-7, p. 1164). Dillard then asserted this claim in a supervisory writ to the Louisiana Supreme Court on August 30, 2013. (Doc. 10-7, p. 1228).

Even if the claim had been exhausted, "errors in state post-conviction proceedings do not, in and of themselves, entitle a petitioner to federal *habeas* relief." Givens v. Prince, No. 6:12-cv-2619, 2014 WL 897816, at *10 (W.D. La. Mar. 6, 2014) (citing Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997); Glenn v. Cain, No. 13-6595, 2014 WL 5040713, at *10 (E.D. La. Sept. 30, 2014) (federal habeas relief

8

cannot be granted to remedy alleged post-conviction errors). Constitutional error must be shown at the trial or direct review stage in order to issue the writ. Id. Furthermore, federal habeas relief is only available for state court misapplication of federal law, and a "federal court lacks authority to rule that a state court incorrectly interpreted its own law." Norman v. Sumlin, No. 14-1024, 2015 WL 4397127, at *3 (E.D. La. July 9, 2015) (quoting Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011)); see also Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (federal habeas corpus relief does not lie for errors of state law).

In the First Judicial District Court ruling, the court ruled on Dillard's petition and order for writ of habeas corpus ad testificandum, finding that Dillard attempted to institute a habeas corpus proceeding in the wrong venue. Even if the state court misapplied state law, it does not address a question of federal law, and therefore federal habeas relief is not available. Furthermore, although Dillard argues that that if the trial court got that decision wrong, "then what other issues in the matter were misinterpreted and erroneously ruled upon[,]" he has not offered more than an unsubstantiated, cursory allegation that the court may have otherwise erred in its ruling. Therefore, this claim is without merit.

      D.    **Petitioner's right to effective assistance of counsel was not violated.**

Dillard asserts four separate claims of ineffective assistance of counsel. Dillard alleges that his counsel was ineffective because: (1) counsel failed to make a contemporaneous objection to prejudicial hearsay testimony that resulted in a violation of the Confrontation Clause; (2) counsel failed to properly argue a Motion to

9

Quash based on Double Jeopardy; (3) counsel failed to comply with the statutory mandates of Louisiana Code of Criminal Procedure article 841 and failed to request the relief desired at the hearing on the Motion to Quash; and (4) counsel failed to properly argue the Motion to Reconsider Sentence and to correct the trial court's misstatement of facts.

Dillard raised these claims in his application for post-conviction relief, filed with the First Judicial District Court, and then urged in supervisory writs to the Second Circuit Court of Appeal and the Louisiana Supreme Court. Defendant concedes these claims were exhausted in state courts.

"An ineffective assistance of counsel claim presents a mixed question of law and fact." Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Therefore, the claim is analyzed under Section 2254(d)(1), and relief is not available unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." Additionally, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

To prevail on his claims, Dillard must prove two elements: that counsel's performance was deficient, and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is compared "to an objective standard of reasonableness," and courts "must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable assistance." Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997); Strickland, 466 at 689. As to the second prong, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonably probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 at 694. A court does not need to address both prongs of the Strickland test, as failure to establish either prong defeats the claim. Strickland, 466 at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

### 1. Counsel was not ineffective for failing to make a contemporaneous objection to Officer Adgate's testimony.

Dillard alleges that his trial counsel was ineffective for failing to make a contemporaneous objection to Officer Adgate's testimony regarding Yvonne Staton and Angie Osborne, the two witnesses in his police car who made a positive identification of Dillard at the scene of Mr. Jim's Chicken. Dillard further contends that the problem was compounded as neither of the two witnesses were present or testified at trial, and therefore this testimony by Officer Adgate constituted inadmissible and prejudicial testimony.

In order to prove prejudice, Dillard "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 at 694. The Court reviews the entire record to determine the relative role that the alleged trial errors played in the total context of the trial, in order to determine whether prejudice exists. Crockett v.

11

McCotter, 796 F.2d 787, 793 (5th Cir. 1986). "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000).

Although Dillard argues Officer Adgate's testimony was prejudicial to his case, he has failed to show how an objection to this testimony would have changed the outcome of the trial. During trial, the State offered the testimony of Bonnie Bounds, the clerk working at the Family Dollar. Bounds identified Dillard as the man who had robbed her. The identification by Staton and Osborne was cumulative evidence. Furthermore, immediately following the robbery, Dillard was followed by Aaronetta Moore. Although Moore died before trial, aspects of her testimony, specifically the information she provided as the chase was ensuing, was admitted via the officers. (See State v. Dillard, 55 So.3d 56, 62 (La. App. 2d Cir. 2010) (statements made by Moore to the officers were admitted, as present sense impressions and excited utterances are not excluded by the hearsay rule)). Due to the other evidence in existence, even if Dillard's counsel had objected at trial to Officer Adgate's testimony, the introduction of the evidence would not have prejudiced the jury's verdict.

Similarly, Dillard argues that by allowing this testimony from the officer, as opposed to testimony from Yvonne Staton and Angie Osbone, he was denied his right to confront the witnesses against him, in violation of the Confrontation Clause. "Before a court may grant relief on the basis of the Confrontation Clause, the court must apply harmless error analysis." Williams v. Cain, No. 6:14-cv-0800, 2016 WL 3248029, at *12 (W.D. La. Apr. 19, 2016) (quoting Kittelson v. Dretke, 426 F.3d 306,

319 (5th Cir. 2005)). The test is whether the constitutional error "had a substantial and injurious effect or influence in determining the jury's verdict." Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). There must be more than a mere reasonable possibility that the error contributed to the verdict in order to entitle a defendant to habeas relief. Nixon v. Epps, 405 F.3d 318, 330 (5th Cir. 2005). There is no likelihood that Officer's Adgate's testimony, as it relates to Staton and Osborne, had a substantial and injurious effect on the jury's verdict. As noted above, there was ample evidence presented at trial of Dillard's guilt, in the form of Bounds's testimony and Moore's statements, in addition to the officer's testimony. This claim is without merit.

### 2. Counsel was not ineffective as to argument on the Motion to Quash based on Double Jeopardy.

Dillard argues that the prosecutor intentionally withheld exculpatory Brady material, and that his trial counsel's admission that he did not believe the prosecutor intended to withhold this evidence resulted in a denial of his constitutional rights. Following two mistrials due to potential Brady material not being disclosed by the State, Dillard's counsel filed a Motion to Quash based on Double Jeopardy prior to the third trial. (Doc. 10-3, pp. 224-28). In both cases, the mistrials were ordered because the prosecutor left out police reports from the discovery provided to defense counsel. Dillard claims that his counsel improperly argued the Motion to Quash when he conceded that there was no prosecutorial misconduct.

In denying Dillard's application for post-conviction relief, the First Judicial District Court found that Dillard had not met his burden of showing a different

outcome, and that the issue of Double Jeopardy was addressed on appeal. (Doc. 10-7, p. 1156). The state court's decision was not contrary to, or an unreasonable application of, Strickland. Dillard provides no evidence that prosecutors intentionally withheld Brady material, thus providing no basis as to why counsel should have done so in arguing the Motion to Quash. He simply states that the "mere fact that two mistrials were ordered are sufficient proof that [the prosecutor's] actions were intentional." (Doc. 1-2, p. 12/16). Without evidence that the prosecutor's actions were intentional, as opposed to simply negligent, there was no reason that defense counsel should have argued that prosecutors engaged in misconduct. Therefore, counsel's performance was not deficient. Dillard's conclusory statements are not sufficient to support this claim.

### 3. Counsel was not ineffective for failing to request the relief desired in the hearing on the Motion to Quash.

Defense counsel filed a Motion to Quash the bill of information, asserting that the State's witnesses were tainted as a result of having been provided with a copy of the State's file prior to trial. Dillard contends that, although counsel filed the Motion to Quash, counsel did not ultimately comply with La. C. Cr. P. article 841[1], as counsel failed to request any relief. Dillard argues that since counsel did not follow the procedures mandated in article 841, he was denied his right to a fair trial.

---

[1] La. C. Cr. P. Art. 841(a) states that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."

The Second Circuit Court of Appeal addressed the disclosure of the State's file to all witnesses. See State v. Dillard, 55 So.3d 56, 67-68 (La.App. 2d 11/3/10); Doc. 10-6, p. 885-87. Defense counsel filed the motion to quash claiming that Dillard's right to a fair and impartial trial was violated because the State provided every witness with a complete copy of every police report, witness statement, criminal history of the defendant, case dispositions regarding the defendant, photos of the crime scene, and witness lists. Id. at 65; Doc. 10-6, p. 881. The trial court found that it was not inappropriate, considering the history of the case involving the two mistrials, for the state to forward a copy of the file to the state's witnesses in an attempt to find any other Brady material. Id. at 67-68; Doc. 10-6, p. 886. The Second Circuit found that the sharing of this evidence did not result in fundamentally flawed or tainted testimony being given at trial, or cause him to lose his right to a fair and impartial trial, as the only lay witness presented at trial was Bounds, who was the clerk robbed that day, and who identified Dillard on the date of the incident and recognized him in the courtroom. Id. at 68; Doc. 10-6, p. 887. In its ruling on Dillard's application for post-conviction review, the First Judicial District Court found that Dillard did not meet his burden under Strickland of showing a different outcome. (Doc. 10-7, p. 1156).

The state court's decision was not contrary to, or an unreasonable application of, Strickland. Dillard has made only a brief and conclusory allegation that this mistake denied him his right to a fair trial. There is no indication that counsel requesting specific relief would have made a difference in the court's ruling, much less in the final outcome of the trial. Dillard has not his burden of establishing prejudice, and therefore has not met the Strickland standard

15

### 4. Counsel was not ineffective in arguing the Motion to Reconsider Sentence.

Dillard contends that his counsel filed a Motion to Reconsider Sentence, but failed to correct: (1) the trial court's misstatements regarding the number of counts of armed robbery convictions that Dillard had, and (2) the time period during which he was out of prison. The trial court had stated that Dillard had pled guilty to seven counts of armed robbery, although Dillard had actually been charged with seven counts and pled guilty to three. The trial court additionally stated that Dillard was released from prison on the prior armed robbery conviction in 2006, when Dillard had actually been released in 2004. State v. Dillard, 55 So.3d 56, 69 (La. App. 2d Cir. 2010); Doc. 10-6, p. 890. Dillard argues that counsel was ineffective for failing to correct these mistakes, resulting in a sentence which was grossly disproportionate and inappropriately tailored to the crime.

The trial court sentenced Dillard to sixty years in prison at hard labor. The Second Circuit Court of Appeal affirmed his sentence in direct appeal, noting that Dillard was adjudicated as a second felony offender, and Dillard's sentence fell within the statutory range. As it was a second felony offense, the sentencing range was 20 to 80 years at hard labor without benefits. See State v. Dillard, 55 So.3d 56, 69 (La. App. 2d Cir. 2010); Doc. 10-6, p. 889-90.

In considering the excessiveness of the sentence on direct appeal, the Second Circuit noted the trial court considered that in 1989, Dillard was sentenced to fifteen years at hard labor, and that he had exited prison in 2006[2]. The trial court also

---

[2] As noted above, Dillard was released in 2004, not 2006.

16

considered that Dillard had already received a substantial benefit under the law as it existed at the time of the guilty plea in his previous case, as the plea was entered and considered as one plea and conviction, although multiple offenses were charged. The trial court further found that any lesser sentence would deprecate the seriousness of the crime, and that Dillard had committed this crime after he previously pled guilty to armed robbery, indicating that Dillard had not learned his lesson. Id. Additionally, Dillard made the victim think she was at risk of death, and used threats of actual violence in committing the crime. The trial court found no mitigating circumstances applied. Id. at 70; Doc. 10-6 at 890-91.

In its ruling on Dillard's application for post-conviction review, the court found that Dillard failed to meet his burden under Strickland of showing a different outcome, and further stated that the Louisiana Second Circuit Court of Appeal determined that Dillard's sentence was not excessive. Doc. 10-7, p. 1156. The state court's decision was not contrary to, or an unreasonable application of, Strickland. Dillard fails to demonstrate prejudice as a result of counsel's alleged deficiency. Dillard cannot show a reasonable probability that, but for counsel's failure to correct the trial court's misstatements regarding the number of armed robbery convictions Dillard had, and the time period during which he was out of prison, a different sentence would have resulted. The sentence was within the applicable range. Dillard had a prior armed robbery conviction, and made the victim in this case believe that she would be shot if she did not give him money. Dillard fails to show that he suffered any prejudice from the trial court's misstatements, or how those misstatements

17

actually affected his sentence. Accordingly, he cannot show the prejudice necessary to support an ineffective assistance claim.

### E. The trial court did not commit error when it did not grant an evidentiary hearing on Dillard's application for post-conviction relief.

Dillard contends that the state court denied him due process by failing to grant Dillard an evidentiary hearing on his application for post-conviction relief as required by Louisiana Code of Criminal Procedure article 930. As this claim related to the ruling of the district court during post-conviction relief, this claim was only asserted before the Louisiana Second Circuit Court of Appeal and the Louisiana Supreme Court. (Doc. 10-7, pp. 1171, 1233-34.)

Louisiana Code of Criminal Procedure article 930 states that "[a]n evidentiary hearing for the taking of testimony or other evidence shall be ordered whenever there are questions of fact which cannot properly be resolved pursuant to Articles 928 and 929." Article 929 allows the court to grant or deny relief without further proceedings, "[i]f the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court[.]" La. C. Cr. P. art. 929.

In this case, the trial court determined that it could properly resolve Dillard's application for post-conviction relief without an evidentiary hearing, and found that La. C. Cr. P. article 929 was applicable in Dillard's case. (Doc. 10-7, p. 1156-57). "Federal courts do not sit as a super state supreme court." Taylor v. Cain, No. 6:09-

0876, 2010 WL 6620876, at *12 (W.D. La. Nov. 5, 2010) (citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983). "Thus, it is not the province of this court to determine if the state courts properly applied state law." Id. (citing Estelle v. McGuire, 502 U.S. 62, 68 (1991); Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998)). "Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C § 2254." Pitts v. Tanner, No. 6:14-cv-3415, 2015 WL 10045174 (W.D. La. Dec. 14, 2015) (and cases cited therin).

Accordingly, this claim is without merit.

## IV. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Dillard's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14)

days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __31st__ day of May, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge